# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

─────────────

ɱ 00-30736

─────────────

CAROL L. AUGUSTER,

Plaintiff-Appellant,

VERSUS

VERMILION PARISH SCHOOL BOARD,

Defendant-Appellee.

─────────────────────

Appeal from the United States District Court
for the Western District of Louisiana

─────────────────────

May 3, 2001

Before REAVLEY, SMITH, and DeMOSS,
    Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Carol Auguster appeals a summary judgment in favor of the Vermilion Parish School Board in his suit under 42 U.S.C. § 1981 and title VII, 42 U.S.C. § 2000e *et seq*. Seeing no error, we affirm.

I.

After teaching and coaching football for many years, Auguster, a black male, was hired to teach sixth grade at J.H. Williams Middle School for the 1997-98 year. Pursuant to his contract, the district reserved the right to remove him for cause in accordance with the state's tenure laws.[1] Auguster alleges that the

─────────────────────

[1] The school board contendsSSand Auguster
(continued...)

superintendent, Dan Dartez, told him when he was hired of "a problem that they had with past black coaches, and if there was another problem, no matter what it was, that he would do his best to get rid of me, from day one." In the same conversation, Auguster alleges, Dartez told him that "he had bad luck with black men working in Abbeville."[2]

In March 1998, Jonathon Williams, the principal, received a complaint that Auguster had improperly used corporal punishment to discipline students. After investigating the incident, Williams sent Auguster a reprimand letter informing him that he had violated the corporal punishment policy. Sometime later, Auguster showed an "R" rated movie to his class, an activity the school board considered unacceptable and for which Auguster received another reprimand.

In May 1998, Auguster received a written evaluation outlining his deficiencies in management and instruction and referencing the corporal punishment incident and the unacceptable movie. As a result of the evaluation, the board developed an "Intensive Assistance Plan," pursuant to which Auguster received counseling and agreed to refrain from corporal punishment. Williams began personally to monitor Auguster's in-class performance to ensure compliance with school board policies.

---

[1](...continued) does not disputeSSthat Auguster was a probationary teacher with no tenure rights.

[2] The school board disputes the statements, and the only evidence supporting the statements is Auguster's testimony. Because we are reviewing a summary judgment, however, we must assume that Auguster's testimony is correct. *See infra.*

On July 8, 1998, Auguster received notice that the board would consider a recommendation by Dartez not to renew his contract. The board held a hearing on July 22 but failed to adopt the recommendation. On August 6, however, Dartez notified Auguster that the board had decided not to renew his contract for the following year. Auguster's position eventually was filled by a white female.

## II.

The board argued that Auguster had failed to establish a viable claim of discrimination. The district court, analyzing the issue under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny, held that, although Auguster had presented a *prima facie* case of discrimination, the school board had articulated a legitimate, non-discriminatory reason for his firing. Because Auguster could not establish that the proffered reason was mere pretext, the court granted summary judgment. Auguster argues that he did establish pretext.

## III.

We review a summary judgment *de novo*, applying the same standards as did the district court, while viewing all disputed facts and reasonable inferences "in the light most favorable to the nonmoving party . . . ." *Duffy v. Leading Edge Prods.*, 44 F.3d 308, 312 (5th Cir. 1995). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED R. CIV. P. 56(c). To survive summary judgment, however, the nonmoving party must do more than allege an issue of material fact: "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to

interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted); *accord Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 205 (5th Cir. 1998).

The district court analyzed Auguster's title VII and § 1981 claims under the framework established by *McDonnell Douglas*, according to which a plaintiff must first establish a *prima facie* case of discrimination, whereupon the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999). At that point, "the *McDonnell Douglas* frameworkSSwith its presumptions and burdensSSdisappear[s], and the sole remaining issue [is] discrimination *vel non*." *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 142-43 (2000) (citations and quotation marks omitted). If the plaintiff can show that the proffered justification is mere pretext, however, that showing, coupled with the *prima facie* case, will be sufficient in most cases to survive summary judgment. *Id*. at 146-48.

"Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* at 143 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). To carry that burden, the plaintiff must produce substantial evidence of pretext:

"Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient." This court has consistently held that an employee's "subjective belief of discrimination" alone is not sufficient to warrant judicial relief.

*Bauer v. Albemarle Corp.*, 169 F.2d 962, 967 (5th Cir. 1999) (quoting *E.E.O.C. v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1443-44, 1448 (5th Cir. 1995)) (citation omitted).[3]

Auguster undisputedly established a *prima facie* case: He is black, he suffered an adverse employment decision, and his former position was filled by a white woman. Likewise, the school board articulated a legitimate, non-discriminatory reason for its decision not to rehire Auguster: his poor evaluation, as evidenced by his inappropriate use of corporal punishment and screening of an R-rated film. Auguster admits that the events occurred, and he cannot seriously dispute that they provide ample justification for the refusal to renew his contract.[4] His case depends on the contention

---

[3] *Bauer* was decided before *Reeves*, which changed our jurisprudence on the evidentiary consequences of a successful showing of pretext. Nothing in *Reeves*, however, abrogates *Bauer*'s requirement of substantial evidence to support a claim of pretext. *Cf. Reeves*, 530 U.S. at 144 ("Petitioner, however, made a substantial showing that respondent's explanation was false.").

[4] At oral argument, Auguster alleged that white teachers who had committed similar offenses were not similarly punished. If taken as true, that allegation might be evidence of disparate impact sufficient to survive summary judgment. The issue has been abandoned, however, because Auguster

(continued...)

that the articulated justification is merely pretext for discrimination.

As evidence of pretext, Auguster argues that Dartez unilaterally refused to renew his contract in contravention of the board's mandate to rehire Auguster.[5] That allegation is not supported by the record, which reflects only that the board reached a stalemate when voting on Dartez's recommendation not to rehire Auguster, not that the board affirmatively voted to renew his contract. The record does support an inference that Dartez acted without legal authority in refusing to renew Auguster's contract, because there is no evidence that the board made any decision whatsoever regarding the renewal of the contract.[6]

Nonetheless, the fact that Dartez acted outside his statutory authority is not probative with respect to whether the board's articulated justification is mere pretext. There is no evidence that he acted any differently from how he would have in any other situation; indeed, the board asserts that Dartez does in fact have the authority unilaterally to make employment decisions with respect to untenured teachers.

Although the school board's view of state

---

[4](...continued) failed to assert it in his brief. *See Strong v. BellSouth Telecomms. Inc.*, 137 F.3d 844, 853 n.9 (5th Cir. 1998) (considering waived an issue asserted at oral argument but not addressed in the briefs).

[5] Auguster also argues that the articulated justification must be pretext because he already had been reprimanded for the incidents in question before the decision not to rehire him. Thus, according to Auguster, the school board could not permissibly have revisited those incidents in deciding whether to renew his contract. That argument is meritless on its face.

[6] The parties stipulated that "the decision to not renew Carol Auguster's contract of employment with the Vermilion Parish School Board was made by Dr. Daniel Dartez in his sole discretion as Superintendent of Vermilion Parish Schools." The parties disagree, however, on the meaning of the stipulation.

Auguster contends that it means Dartez acted on his own, while the school board contends that (continued...)

[6](...continued) the stipulation means Dartez was vested with discretion to make the decision. Under Louisiana law, the board's interpretation appears to be impermissible: Although the statutes do not refer specifically to contract renewals, they do expressly govern the hiring of teachers and the dismissal of probationary teachers, the combination of which presumably envelops contract renewals. *See* LA. REV. STAT. ANN. §§ 17:81, 17:442.

Both of those statutes provide for action by the school board on the superintendent's recommendation, but not for unilateral action by the superintendent. Furthermore, the Louisiana Attorney General has interpreted the statutes to preclude delegation of those functions to the sole discretion of the superintendent. *See* La. Att'y Gen. Op. No. 93-654 (1993) ("Th[e] power to hire, fire, demote, transfer and promote teachers is a discretionary power vested in the school board and may not be delegated."); La. Att'y Gen. Op. No. 80-1103 (1980) ("[T]he legislature strongly intended that the local school board should have the final selection authority and that this selection power should not be totally in the hands of the superintendent. It is therefore the opinion of this office that both the legislative intent and plain meaning of the statute dictate that the local school board must approve and select teachers to be hired . . . ."). Thus, although we can infer that the board attempted to vest sole authority for the decision in Dartez, we cannot infer that it in fact did so.

law may be wrong in this respect, it does indicate that Dartez's failure to renew Auguster was not a maverick action, as Auguster asserts, which might be evidence that the board's articulated justification is mere pretext. Instead, Dartez's action merely represents the mistaken understanding of both Dartez and the board that he had unilateral authority to make employment decisions, at least with respect to untenured teachers.

That alone is insufficient to establish pretext. Thus, because Auguster failed to carry his burden of establishing pretext, the district court correctly concluded that his claim cannot survive under the *McDonnell Douglas* framework; Auguster therefore must prove discrimination without the benefit of *McDonnell Douglas*'s shifting burdens.

IV.

Auguster did present some direct evidence of discrimination: the comments by Dartez to the effect that the school had "a problem . . . with past black coaches, and if there was another problem, no matter what it was, that he would do his best to get rid of me, from day one."[7] Given the overwhelming evidence supporting the school board's legitimate justification, however, Dartez's comments can be viewed as no more than stray remarks, which are insufficient to survive summary judgment.

---

[7] Auguster contends that, under the *McDonnell Douglas* framework, the comments establish that the school board's asserted justification is pretext. Although discriminatory comments can be evidence of pretext, *see Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 n.9 (5th Cir. 2000), in a case such as this, where there is no other evidence of pretext, it is appropriate to analyze such comments as direct evidence of discrimination, apart from the *McDonnell Douglas* framework.

In *Russell*, 235 F.3d at 229 & n.19, we questioned the continued vitality of the stray remarks doctrine, stating that, "[i]n light of the Supreme Court's admonition in *Reeves*, our pre-*Reeves* jurisprudence regarding so-called 'stray remarks' must be viewed cautiously." Notably, however, in both *Reeves* and *Russell*, there was substantial evidence of pretext apart from the comments at issue.[8] In fact, the Supreme Court faulted our decision in *Reeves*[9] not for applying the stray remarks doctrine, but for failing to accord proper weight to the

---

[8] In *Reeves*, the employer cited the employee's poor recordkeeping as justification for dismissing him, asserting that the recordkeeping affected union relations and cost the company overtime wages. The Court found, however, that the plaintiff had produced substantial evidence that the articulated justification was pretext by explaining in detail the alleged bookkeeping discrepancies and showing that there had never been a union grievance filed because of them; nor had the employer ever even calculated the amount of the alleged overpayments resulting from the discrepancies. *Reeves*, 530 U.S. at 143-46. Only after discussing that evidence of pretext and noting that the court of appeals had in fact found pretext did the Court look at "additional evidence of discrimination" in the form of age-related comments. *Id.* at 151.

[9] Likewise, in *Russell*, 235 F.3d at 224, we found that where the employer justified firing the employee to introduce a "change in management style," the employee's outstanding evaluations and the employer's failure to follow internal procedures in terminating the employee were substantial evidence of pretext. Only then did we analyze remarks evidencing age-related animus as "Additional Evidence of Discrimination." *Id.* at 225.

[9] *Reeves v. Sanderson Plumbing Prods., Inc.*, 197 F.3d 688 (5th Cir. 1999), *rev'd*, 530 U.S. 133 (2000).

plaintiff's substantial evidence of pretext. *Reeves*, 530 U.S. at 149 ("It suffices to say that, because a *prima facie* case and sufficient evidence to reject the employer's explanation may permit a finding of liability, the Court of Appeals erred in proceeding from the premise that a plaintiff must always introduce additional, independent evidence of discrimination."). In a decision that binds us, this court already has interpreted *Reeves* not to overrule our stray remarks jurisprudence, at least where the plaintiff has failed to produce substantial evidence of pretext. *See Rubinstein v. Adm'rs of Tulane Ed. Fund*, 218 F.3d 392, 400-01 (5th Cir. 2000) (applying the stray remarks doctrine where the plaintiff had failed to establish that each of the defendant's articulated justifications was pretext), *cert. denied*, 121 S. Ct. 1393 (2001).

We analyze stray remarks under *Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir. 1996): "[F]or comments in the workplace to provide sufficient evidence of discrimination, they must be '1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999) (quoting *Brown*, 82 F.3d at 655). It is true that the comments at issue here were made by Dartez, who ultimately made the decision not to renew Auguster's contract; moreover, the comments pertained to black teachers, and in particular to Auguster. Nonetheless, the comments were made nearly a year before the decision not to renew Auguster's contract, and there is no substantial evidence that the comments related to Dartez's ultimate decision not to renew Auguster's contract.

The fact that Dartez told Auguster that "if there was another problem, no matter what it was, that he would do his best to get rid of [him]" is insignificant in comparison to the evidence of Auguster's unfitness as a teacher and thus is insufficient, on its own, to establish discrimination.[10] Absent any evidence that Dartez would have been more lenient of similar indiscretions by a white teacher or that Auguster did not in fact commit the acts cited by the school board in his evaluation, we cannot conclude that Dartez's statement, on its own, is sufficient to meet Auguster's burden of establishing discriminatory motive for the refusal to renew his contract.

AFFIRMED.

---

[10] In *Rubinstein*, 218 F.3d at 400, a Jewish professor who was denied tenure produced evidence that members of the committees responsible for the denial had made discriminatory comments, including an observation "that, if 'the Russian Jew' could obtain tenure, then anyone could." Faced with that evidence, we concluded that "Rubinstein has failed to meet his burden of producing any evidence of discrimination sufficient to survive summary judgement, and his evidence to rebut the non-discriminatory reasons offered by Tulane is not so persuasive so as to support an inference that the real reason was discrimination." *Id.* Similarly, the alleged comment by Dartez cannot, without more, support an inference that the real reason for the school board's refusal to renew his contract was discrimination.