Cecil **LASSETTER**, Plaintiff,

v.

**STRATEGIC MATERIALS, INC.**, Defendant.

**Civil Action No. 3:98–CV–2889–M.**

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 26, 2002.

Brett Lee Myers, Attorney at Law, David Goodman & Madole, Dallas, TX, for Plaintiff.

Thomas V. Erdos, Jr., J. Chris Juravich, Erdos & Jurovich, Sugar Land, TX, William G. Harger, Hoover & Harger, Sugar Land, TX, for Defendant.

Earl F. Hale, Jr., Dallas, TX, pro se.

### *MEMORANDUM ORDER AND OPINION*

LYNN, District Judge.

Before the Court are the Defendant's Rule 50(b) Motion for Judgment as a Matter of Law ("JMOL"), and, Alternatively, its Rule 59 Motion for a New Trial, filed December 20, 2001, and the Plaintiff's Rule 54 Motion for Entry of Judgment and for Attorney's Fees, filed November 29, 2001. Defendant Strategic Materials, Inc. ("Strategic") argues that Plaintiff Cecil Lassetter ("Lassetter") has failed to produce sufficient evidence of pretext to rebut each of Strategic's non-discriminatory reasons for his termination and that his allegations of disparaging comments from two company employees constitute stray remarks. Lassetter argues that he produced testimony directly contradicting each of Strategic's stated reasons and that the Court should not invade the province of the jury to make credibility determinations when the jury has already spoken on these issues. For the reasons stated herein, the Court **GRANTS** Strategic's Rule 50 Motion.

## FACTUAL PREDICATE

Lassetter worked for Strategic as a plant manager at its glass recycling facility in Midlothian, Texas.[1] On February 5, 1998, Strategic's Vice President, Curt Bucey ("Bucey"), suspended Lassetter, with pay, for thirty days to investigate complaints about his job performance. Lassetter had not previously been disciplined or received a negative performance evaluation. Bucey detailed the results of his investigation in a six page letter, sent to Lassetter on March 5, 1998, which included a reference to accusations by various unidentified Strategic employees.[2] Lassetter was given an opportunity to respond to those accusations. By letter dated March 28, 1998, he responded that "[t]he allegations contained in the Letter [of March 5, 1998] are untrue unsubstantiated, unwarranted and shows the company's intent to force me out in violation of the Age Discrimination Act." On April 3, 1998, Bucey terminated Lassetter for cause.[3] Lassetter was then 58 years old.

On December 9, 1998, Lassetter filed his Complaint alleging Strategic violated the Age Discrimination in Employment Act ("ADEA") and intentionally inflicted emotional distress on Lassetter. Judge Sidney A. Fitzwater, by Order dated March 31, 1999, dismissed Lassetter's intentional infliction claim. The case was subsequently transferred to this Court by Special Order.

On September 7, 2001, a three day jury trial was held. At the close of Lassetter's evidence and again at the close of all the evidence, Strategic moved for JMOL under Rule 50 of the Federal Rules of Civil Procedure. The Court denied the motions without prejudice. The jury returned a verdict for Lassetter, finding that Strategic had willfully discriminated against him, and awarded him $103,144.00 in back pay.[4]

On December 20, 2001, Strategic again moved for JMOL.

## STANDARD OF REVIEW

 JMOL is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."[5] There is no legally sufficient evidentiary basis when " 'the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict.' "[6] The Court is to review the record as a

---

1. He also worked in Strategic's Houston recycling facility for three weeks.

2. The letter was given to the jury in redacted form. However, the justifications raised in the letter were detailed by Bucey in oral testimony.

3. In his termination letter to Lassetter, Bucey stated that:

 Since my letter, another supplier informed us that when you open your plant in Fort Worth, we need to know that they will start sending their glass to your new plant.
 You are hereby terminated for cause, the cause being the complaints and issues with your job performance raised in my letter of March 5, your lack of response to the same, and the apparent breach of your duty of loyalty to the company as plant manager in efforts to divert suppliers from the plant.

4. The Court on the record made a finding that reinstatement was not feasible. While recognizing that front pay is an equitable remedy awarded by the court rather than the jury, the Court sought an advisory finding from the jury on front pay. ' The jury would have awarded $109,838.00 to Lassetter in front pay. *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 127 (5th Cir.1992) ("[s]ince front pay is an equitable remedy, the district court rather than the jury should determine whether an award of front pay is appropriate, and if so, the amount of the award.")

5. FED.R.CIV.P. 50(a).

6. *Rubinstein v. Adm'rs of the Tulane Educ. Fund.*, 218 F.3d 392, 401 (5th Cir.2000) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc), *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir.1997) (en banc))

whole, drawing all reasonable inferences in favor of the non-moving party and without making credibility determinations or weighing the evidence.[7] We also "give credence to ... that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"[8]

## ANALYSIS

Under the ADEA, it is "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[9] ADEA cases employ the *McDonnell Douglas* burden shifting framework.[10] In *Reeves v. Sanderson Plumbing Products, Inc.*, the Supreme Court reviewed the burden-shifting framework that governs employment discrimination cases, and its relationship to a Rule 50 motion.[11] To sustain a claim, Lassetter must have first established a prima facie case of discrimination by proving that: (1) he was a member of a protected class—those persons over the age of forty; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was either replaced by someone outside of the protected class, replaced by

someone younger, or otherwise discharged because of his age.[12]

If the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the employer to produce evidence that its actions were justified by a legitimate, nondiscriminatory reason.[13] This burden of production "can involve no credibility assessment."[14] Finally, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the employer's nondiscriminatory explanation is pretextual.[15] In considering a motion for JMOL, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."[16] Nonetheless, "[w]hether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law."[17] "In particular, evidence of pretext is not enough where the plaintiff has created only a weak issue of fact as to whether the employer's reason is untrue, and there is 'abundant and uncontroverted

**7.** *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

**8.** *See id.* at 151, 120 S.Ct. 2097 (quoting 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2559, p. 300 (2d ed.1995)).

**9.** 29 U.S.C. § 623(a)(1).

**10.** *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**11.** 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

**12.** *Id.; Bauer v. Albemarle*, 169 F.3d 962, 968 (5th Cir.1999).

**13.** *Id.* at 142, 120 S.Ct. 2097.

**14.** *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

**15.** *Id.* at 143, 120 S.Ct. 2097.

**16.** *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097.

**17.** *Id.* at 148–49, 120 S.Ct. 2097.

independent evidence that no discrimination [ ] occurred' " [18]

■ Here, Strategic does not dispute that Lassetter established his prima facie case of discrimination. In response to that prima facie case, Strategic proffered several nondiscriminatory reasons for discharging Lassetter: his disloyalty to the company, his disrespect for subordinates and senior management, abandonment of his responsibilities at the Houston plant, his failure to make timely inventory reports and to implement a system to measure quality, and his failure to attend a plant manager's meeting. Lassetter then attempted to disprove Strategic's proffered justifications through his testimony and the testimony of three former employees of Strategic. He also introduced evidence of age-related comments by two of his former supervisors, Tom Vossman and Rich Smithson. Lassetter claims that his prima facie case coupled with evidence of pretext and supervisors' age-related remarks is sufficient to avoid JMOL. The Court disagrees.

Looking at the evidence submitted by Lassetter at trial, rebuttal proof was presented to contradict some, but not all of Strategic's justifications. Consideration of Strategic's JMOL must concentrate on whether Lassetter introduced substantial evidence of pretext. The Court will thus review the evidence, bearing in mind that the Court "focuses not on the plaintiff's prima facie case, but on the ultimate question of whether the record contains sufficient evidence to support a jury finding of race discrimination." [19]

Bucey suspended Lassetter after having a conversation with Elaine Copeland Spradley ("Copeland"), the Midlothian facility weighmaster. Bucey testified that he believed Lassetter thought his supervisor, Rich Smithson, was coming to Midlothian to fire him and he preemptively began photocopying records to take with him to Dlubak, one of Strategic's main competitors. At trial, Lassetter denied photocopying the records, but admitted meeting with Ricky Carr, a former Strategic employee who was then a Dlubak plant manager, and discussing Lassetter possibly working for Dlubak in the future. Lassetter went to work for Dlubak after Strategic terminated him. While Ricky Carr, Patrick Richards, and Roy Benavides all testified that Lassetter was a loyal Strategic employee who was never disloyal to it during his employment, Lassetter did not produce evidence to rebut Strategic's proof that Bucey suspended, and later terminated, Lassetter because *he* believed, from conversations with Copeland and others, that Lassetter was disloyal.

Bucey also testified that he terminated Lassetter because, after only three weeks, he abandoned his responsibilities at the Houston plant, leaving it unsupervised, without giving advance notice to either Smithson or Bucey. By his own admission, Lassetter's responsibility at the Houston plant consisted of a thirty day trial period.[20] Lassetter testified that, a week before the deadline, he "came back home, decided life was too short. This [wa]s just not worth it." Smithson was not informed of the decision until a week after it was made. He then informed Bucey. Lassetter testified that during the trial period, he made Smithson aware, through his complaints, that he did not want to

---

**18.** *Raggs v. Miss. Power & Light Co.,* 278 F.3d 463, 2002 WL 13632, *3 (5th Cir. January 3, 2002) (quoting *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097).

**19.** *Id.*

**20.** Strategic claims the trial period was for ninety days. Lassetter claims it was for thirty. Lassetter left before the expiration of either deadline.

manage the Houston plant. Lassetter argues "[t]he jury was entitled to judge the credibility of the witnesses and find that Defendant's reliance on Plaintiff's decision to not assume the Houston responsibilities was pretextual if it believed Plaintiff and his testimony that he informed Smithson that he did not want the Houston responsibilities." Regardless of Lassetter's unwillingness to accept the responsibilities at the Houston plant on a full time basis, he does not explain abandoning his duties *before* the end of the management trial period in Houston or how Strategic's justification amounts to pretext.

Bucey further testified that Lassetter failed to timely make inventory reports due at the end of each month, instead making them only when he felt like it. Bucey stated that the company was concerned that there was more inventory at the Midlothian plant then was showing up on the books. Roy Benavides, who succeeded Lassetter as plant manager, testified that he operated the Midlothian facility "just the way Cecil was running it," but was never suspended. While this general statement may go to a pretext inquiry, no specific evidence regarding inventory reports was presented and no specific question dealing with actual preparation of inventory reports was posed.

The Supreme Court faulted the Fifth Circuit panel in *Reeves* for failing to accord proper weight to the plaintiff's substantial evidence of pretext. "It suffices to say,

that because a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability, the Court of Appeals erred in proceeding from the premise that a plaintiff must *always* introduce additional, independent evidence of discrimination." [21] The case before the Court falls within the ambit of those in which evidence beyond that presented in support of a prima facie case is necessary. This is so because Lassetter has not produced sufficient evidence of pretext; he has only created "a weak issue of fact" on the falsity of Strategic's justifications for terminating him. This is simply not enough to support a judgment for age discrimination.[22]

No rational fact finder could conclude that Bucey engaged in unlawful age discrimination based on the evidence in this case.[23] As stated by the Fifth Circuit in *Mayberry v. Vought Aircraft Co.*, "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." [24] This standard is important in weighing the totality of Lassetter's evidence of direct discrimination as well as his pretext evidence. The evidence produced demonstrates that Bucey placed Lassetter on paid suspension because he *believed* him to be disloyal, disrespectful, and inattentive to the company's new business model.[25] The verdict required the jury to stack too many unsupported inferences of Bucey's apparent "belief," namely that Bucey believed that Copeland was

---

**21.** *Reeves*, 530 U.S. at 149, 120 S.Ct. 2097 (emphasis added).

**22.** *See Raggs*, 278 F.3d 463, 467–68 (even though the plaintiff produced evidence the sum of which "possibly could be construed as more than a 'mere scintilla' of evidence of pretext" in a race discrimination case, the Fifth Circuit found summary dismissal appropriate, stating "[e]vidence of pretext alone may, but not always, sustain a fact-finder's conference [sic] of unlawful discrimination").

**23.** *See, e.g. Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir.1995).

**24.** *Id.* at 1091.

**25.** *See also Schaffner v. Glencoe*, 256 F.3d 616, 621–22 (7th Cir.2001) (the employee's "perception of himself [ ] is not relevant." It is the perception of the decision maker which is relevant).

lying about Lassetter's copying of documents, that Bucey believed Lassetter was really justified in leaving the Houston plant unsupervised because he had told Smithson earlier that he was not interested in managing it, and that inventory reports did not matter in Lassetter's case because his plant was profitable.

Lassetter produced evidence of age-related comments by two supervisors. Lassetter testified that when he supervised Lassetter, Tom Vossman referred to him as "old man" while he was his supervisor, and made a statement about getting rid of "a few dinosaurs" at a Tennessee plant manager's meeting in 1995. Lassetter also testified that Rich Smithson, his immediate supervisor in 1998, commented that the only thing wrong with Lassetter was "oldheimers." Lassetter argues that the statements were admitted into evidence without objection by Strategic and that Strategic therefore cannot complain that the jury used them in reaching its verdict. He further argues that, even if Strategic has not waived all its objections, Strategic was adequately protected by the inclusion of the stray remarks' instruction in the Court's jury charge.[26]

Counsel for Strategic emphasized the stray remarks doctrine and Strategic's op-position to Lassetter's reliance on stray remarks on numerous occasions throughout the trial. Strategic's argument on JMOL utilizes that doctrine to attack the conclusion that Lassetter's evidence can sustain a verdict in his favor. Strategic has not waived his right to complain about the stray remarks.[27]

■ In light of Lassetter's failure to rebut each of the nondiscriminatory reasons Strategic proffered, to constitute sufficient evidence of discrimination the comments of Vossman and Smithson must satisfy the test presented in *Brown v. CSC Logic, Inc.*[28] For comments in the workplace to provide sufficient evidence of discrimination under *Brown* and its progeny, they must be: (1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the termination; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue.[29]

After 1996, Vossman was no longer Lassetter's supervisor. Lassetter was not terminated until April 3, 1998. Further, Lassetter offered no evidence that Vossman had anything to do with Bucey's decision to terminate Lassetter.[30] The temporal

---

**26.** The Court instructed the jury as follows:
 In reaching your decision, you may consider comments in the workplace only if Lassetter proves by a preponderance of the evidence that they are: (1) related to the protected class of persons of which Lassetter is a member—that is, persons over forty; (2) proximate in time to Lassetter's discharge; (3) made by an individual with authority over the decision to discharge Lassetter; and (4) related to the decision to discharge Lassetter.
 Court's Charge at 6–7.

**27.** *Wallace v. The Methodist Hospital Sys.*, 271 F.3d 212, 221 (5th Cir.2001).

**28.** 82 F.3d 651, 655 (5th Cir.1996). *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219,

225 n. 9 (5th Cir.2000) (discriminatory comments can be evidence of pretext, but *Brown* test for stray remarks survived *Reeves*). *See also Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 404 n. 7 (5th Cir.2001) (analyzing alleged race-related comments as direct discrimination and finding that "[g]iven the overwhelming evidence supporting the school board's legitimate justification, [the defendant's] comments can be viewed as no more than stray remarks, which are insufficient to survive summary judgment").

**29.** *Id.; See also Auguster*, 249 F.3d at 404 (5th Cir.2001); *Russell*, 235 F.3d at 230.

**30.** Although he first implied that Vossman pulled and reviewed Lassetter's employment

gap and Lassetter's failure to link the comments to the adverse employment decision mandate a finding that Vossman's comments were mere stray remarks which constitute no evidence of discrimination.

Smithson, who himself is sixty-six and was sixty when Strategic hired him, denied making any age-related comment to Lassetter. However, assuming the "oldheimers" comment was made, it is a stray remark. It is undisputed that as between Bucey and Smithson, Bucey made the decision to terminate Lassetter. In fact, Lassetter's jury argument mocked Strategic's "strategy" of placing the older Smithson at the defense table to curry favor with the jury when, in fact, the considerably younger Bucey was the real decision maker. This argument contradicts Lassetter's contention that Smithson, as a decision maker, made age-related comments to him. Lassetter testified that he did not believe that Smithson was discriminating against him because of age. There is no evidence linking the alleged comment to a decision maker and to the decision to terminate Lassetter. The comments by Vossman and Smithson thus fall within the parameters of the stray remark doctrine and provide no evidence of discrimination.[31]

In *Wallace v. Methodist Hospital System,* the plaintiff nurse brought an action against the hospital defendant for pregnancy discrimination.[32] The first time the case went to trial, the jury was unable to reach a verdict and a mistrial was declared. In the second trial, the jury returned a verdict for the plaintiff, awarding her $70,000 in compensatory damages and $437,500 in punitive damages. The district court granted the defendant's JMOL. Affirming, the Fifth Circuit held that (1) the plaintiff did not prove that a similarly situated nurse was treated differently, and (2) the comments relied upon were stray remarks. Two remarks made by the plaintiff's supervisor were introduced as direct evidence of discrimination: (1) "I don't know how to classify you because you were gone three months and now you'll be gone three months again," and (2) answering, when asked why the plaintiff was terminated, that "[f]irst of all, she's been pregnant three times in three years." The court found the first statement simply referred to the plaintiff's absence from work and how to classify her for promotional purposes and the second statement was a stray remark because the supervisor who allegedly made the statement did not participate in the decision to terminate the plaintiff. Other more innocuous comments

file, as evidenced by the "Tom V." noted on the file, counsel for Lassetter stated, in the trial, that he was not going to argue this in the presence of uncontested testimony that the "Tom V." referred instead to "Tom V. Erdos," one of Strategic's attorneys.

31. *See also Price v. Marathon Cheese Corp.,* 119 F.3d 330, 337 (5th Cir.1997) (supervisor's comment that he wanted to get rid of older employees and hire "young blood" made two years prior to termination constituted a stray remark); *EEOC v. Texas Instruments, Inc.,* 100 F.3d 1173, 1181–82 (5th Cir.1996) (comments that company had to make room for younger supervisors and "it's just that you've reached that age and years of service that we can bridge you to retirement" found to be

stray remarks); *Waggoner v. City of Garland,* 987 F.2d 1160, 1166 (5th Cir.1993) (supervisor stating that "younger person could do faster work" and reference to plaintiff as "old fart" were mere stray remarks); *Turner v. North American Rubber, Inc.,* 979 F.2d 55, 59 (5th Cir.1992) (characterizing comment by vice-president of operations that he was sending "three young tigers" to assist, as a stray remark); *Guthrie v. Tifco Indus.,* 941 F.2d 374, 379 (5th Cir.1991) (comment by founder of company that his son needed to "surround himself with people of his age" held to be a vague, stray remark), *cert. denied,* 503 U.S. 908, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992).

32. 271 F.3d 212, 217 (5th Cir.2001).

were found not temporally related to the termination.

Like the plaintiff in *Wallace*, Lassetter has not produced substantial evidence to rebut or contradict all of Strategic's articulated non-discriminatory reasons for discharging Lassetter. Further, the comments on which he relied as direct evidence of discrimination do not, either alone or in conjunction with the other evidence offered at trial, demonstrate discriminatory intent. There is simply no legally sufficient basis from which a reasonable jury could conclude that Lassetter had been discharged because of discrimination. JMOL is appropriate.

Given that Lassetter cannot sustain his burden of demonstrating Strategic unlawfully discriminated against him because of his age, the Court does not address the issue of additional damages for willful discrimination.[33] Because the Court finds Strategic is entitled to JMOL, it does not reach Strategic's alternative request for a new trial.

## CONCLUSION

To carry his burden of persuasion, Lassetter had to produce sufficient evidence of pretext and put forward evidence to rebut each of Strategic's articulated non-discriminatory reasons for terminating him.[34] Reviewing the evidence in the light most favorable to Lassetter, he failed to meet this burden. Specifically, he failed to produce evidence that Bucey's concern over Lassetter's alleged copying of company documents for a job with Strategic's competitor, failure to timely make inventory reports, and abandonment of responsibilities at the Houston plant were pretextual. The record is simply devoid of evidence which would lead a reasonable fact finder

to conclude that age-related discrimination led to Plaintiff's termination. Defendant's Rule 50(b) Motion for Judgment as a Matter of Law ("JMOL") is **GRANTED,** and the Plaintiff's Rule 54 Motion for Entry of Judgment and for Attorney's Fees, is **DENIED.**

**SO ORDERED.**

---

**33.** *Russell*, 235 F.3d at 230 (quoting *Hansard v. Pepsi–Cola Metro. Bottling Co.*, 865 F.2d 1461, 1470 (5th Cir.), *cert. denied*, 493 U.S. 842, 110 S.Ct. 129, 107 L.Ed.2d 89 (1989)).

**34.** *Auguster*, 249 F.3d at 402.