**Joan Ruben GOODWIN**

v.

**LIBBEY GLASS, INC.**

Civil Action No. 03–1353.

United States District Court,
W.D. Louisiana.

May 20, 2005.

Joan Ruben Goodwin, Shreveport, LA, pro se.

Eskridge E. Smith, Jr., Linda S. Blackman, Bossier City, LA, for Defendant.

### MEMORANDUM RULING

HICKS, District Judge.

### I. INTRODUCTION.

This matter is before the Court on Defendant Libbey Glass Inc.'s ("Libbey Glass") Motion for Summary Judgment. [Doc. 22]. Libbey Glass moved for summary judgment on Plaintiff Joan Ruben Goodwin's ("Goodwin") claims that she is entitled to permanent and total disability benefits under a group insurance plan provided by Libbey Glass. After reviewing the entire record, the Court finds that there are no genuine issues of material fact in dispute, and that summary judg-

ment in favor of Libbey Glass is proper as a matter of law.

## II. PROCEDURAL BACKGROUND.

On July 18, 2003, Goodwin filed a complaint before this Court seeking disability retirement benefits pursuant to her employment at Libbey Glass. [Doc. 1]. She later filed a first amended complaint, further alleging her entitlement to permanent and total disability benefits under a group insurance plan provided by Libbey Glass. [Doc. 6]. On August 25, 2003, Libbey Glass answered, pleading that Goodwin did not timely request permanent and total disability benefits under the group insurance plan. [Doc. 12]. On May 28, 2004, Libbey Glass filed the instant motion for summary judgment on the basis that there are no genuine issues of material fact as to whether Goodwin timely applied for per-manent and total disability benefits. [Doc. 22]. Goodwin has filed multiple memoranda in opposition to the motion for summary judgment. [Docs. 25 & 27].

## III. FACTUAL BACKGROUND.

Plaintiff Joan Ruben Goodwin was employed by Libbey Glass[1] as an hourly worker from March 12, 1981 until March 1, 1994. [See Doc. No. 22 at 3; Defendant's Ex. 16]. Pursuant to the labor contract between Libbey Glass and American Flint Glass Workers' Union AFL–CIO, Local Union No. 711, Libbey Glass provided its hourly employees with a group insurance plan, i.e., the Hourly Employees' Welfare Benefit Plan, that included permanent and total disability benefits. [See id. at 1–2; Defendant's Ex. 16]. The plan was underwritten, i.e., fully insured, by Aetna Life Insurance Company ("Aetna"). [See id. at 2; Defendant's Ex. 16]. Aetna also set forth the procedure by which Libbey Glass employees applied for benefits under the

plan. [See id. at 2; Defendant's Ex. 6]. Specifically, as to permanent and total disability benefits, the plan provided that "Aetna must receive written notice of claim at its Home Office within 12 months after [the applicant] stop[s] active work. Proof of the permanent and total disability must be received no later than 12 months after premium payments stop." [Defendant's Ex. 6]. The plan also stated that an applicant was permanently and totally disabled only if:

- EITHER disease or injury stops you [the applicant] from working at:

   your [the applicant's] own job; or
   any other job for pay or profit;

   and it must continue to stop you [the applicant], for life, from working at any reasonable job. A "reasonable job" is any job for pay or profit which you [the applicant] are, or may reasonably become, fitted for by education, training, or experience.

- OR you [the applicant] lose one of these functions:

   the sight of both eyes;
   the use of both hands;
   the use of both feet;
   the use of one hand and one foot.

[Defendant's Ex. 6].

In 1992, Goodwin claimed that her right forearm and wrist were injured while working as a sealer at Libbey Glass. Specifically, she alleged that "on June 5, 1992 and/or August 10, 1992, ... she was working at the Libbey Glass Plant, when, on June 5, 1992, she felt pain in her right wrist and dropped some glasses and furthermore, on August 10, 1992, she alleges she was struck on the right forearm and wrist by a fork lift driven by Daryl Douglas, injuring her right wrist." [Defen-

---

1. For purposes of this memorandum ruling, Libbey Glass refers to the Libbey Glass plant located on Jewella Avenue in Shreveport, Louisiana.

dant's Ex. 2]. In light of these allegations, Goodwin filed a workers' compensation claim relating to the injuries to her right wrist and forearm.

During the time that her workers' compensation claim was pending, Goodwin filed for, and received, short-term disability benefits under Libbey Glass' hourly employees' group insurance plan. [*See* Defendant's Ex. 2 at 39–40]. Goodwin acknowledged that each time she applied for the short-term disability benefits, which lasted twenty-six (26) weeks, she was required to submit an application and to provide a physician's statement of disability. [*See id.* at 40].

By letter dated December 10, 1993, Teresa Morgan of the Insurance Department of Libbey Glass informed Goodwin that she would reach her twenty-sixth week of short-term disability payments on January 12, 1994. [*See* Defendant's Ex. 7]. At this point, Goodwin's workers' compensation claim relating to her 1992 work-related injuries was pending and was set for trial in February 1994. [*See* Doc. No. 22 at 4]. Then, in January 1994, Goodwin settled her workers' compensation claim relating to her wrist and forearm injuries. [*See id.*]. On February 14, 1994, an "Order of Approval" relating to Goodwin's workers' compensation claim was signed and filed and Goodwin received $12,634.00 in settlement proceeds. [*See* Defendant's Ex. 2].

Goodwin's last day of "active work" at Libbey Glass was June 25, 1993. [*See* Defendant's Ex. 16]. However, Libbey Glass did not formally terminate her employment until March 1, 1994, the date upon which Goodwin was removed from the active employee roll for being physically unable to perform job duties. [*See* Defendant's Exs. 8 & 12].

Goodwin maintains that she never received notice of her termination from Libbey Glass. [*See* Defendant's Ex. 1 at 9,

lines 16–18]. Yet, by letter dated February 18, 1994, Jeff Garland ("Garland") of Libbey Glass' personnel department informed Goodwin that she was vested in her retirement plan. [*See* Defendant's Ex. 9]. Specifically, Garland wrote:

> Since you *were* employed more than five years, you are vested in our retirement plan.

[*Id.*] [emphasis added]. Further, Goodwin also acknowledged in her deposition that she knew her employment at Libbey Glass had come to an end after her workers' compensation claim relating to her wrist and forearm injuries was settled. [*See* Defendant's Ex. 1 at 30–31].

Goodwin alleges that she made numerous requests for her permanent and total disability benefits under Libbey Glass' group insurance plan. Specifically, Goodwin submitted the affidavit from Marget Howard ("Howard"), which states that Goodwin went to the Human Resources Department at Libbey Glass in 1992 and requested her permanent total disability benefits. [*See* Doc. No. 25, Affidavit of Marget Howard]. Further, in her deposition, Goodwin contends that she filed a claim with Libbey Glass for permanent and total disability benefits prior to the time she settled her workers' compensation claim in 1994. [*See* Defendant's Ex. 1 at 25–26].

Conversely, Peter Williams ("Williams"), the Human Resource Manager of Libbey Glass, stated in his sworn affidavit that he reviewed all Insurance Department and employment/personnel records relating to Goodwin and found no evidence that Goodwin made a written application for permanent total disability benefits before or after her termination on March 1, 1994. [*See* Defendant's Ex. 16]. Moreover, Williams specifically attested that Goodwin never made a request for permanent total disability benefits after her last day of

actual work on June 23, 1993 or after her employment was terminated on March 1, 1994. [*See id.*].

Further, Goodwin acknowledged in her deposition that she knew Aetna would be the party to approve her request for permanent and total disability benefits. [*See* Defendant's Ex. 18]. She further stated that she called Aetna "about five years ago [from the date of her March 26, 2004 deposition] because [she] wasn't getting anywhere with Libbey" and Aetna stated that it did not have any record of her applying for permanent and total disability benefits. [*Id.*] [2] Peter Kriegler ("Kriegler"), Aetna's Claims Manager, stated that he reviewed all claims files, documents, applications, and other information relevant to any possible request for permanent total disability benefits by Goodwin and found no evidence that Aetna had ever received an application for permanent total disability benefits for or on behalf of Goodwin. [*See* Defendant's Ex. 12].

By letter dated September 4, 2002, Brynn S. Fleig ("Fleig"), a Benefit Analyst with Libbey Glass' Corporate Human Resources Office, responded to Goodwin's request for information regarding her eligibility to receive permanent and total disability benefits. [*See* Defendant's Ex. 21]. Fleig informed Goodwin that she was not eligible for permanent and total disability benefits because neither Aetna nor Libbey Glass had "any application from [her] for

PTD [3] status in 1993 or any time thereafter." [*Id.*].[4] Fleig also informed Goodwin of her right to appeal the decision. [*See id.*].

On October 14, 2002, Patricia S. Hanna, Manager of Employee Benefits for Libbey Glass, again responded to Goodwin's request for documentation on her alleged application for permanent and total disability benefits and the procedure to appeal the denial of such a claim. [*See* Defendant's Ex. 20]. In this letter, Goodwin was "advised that neither Aetna nor Libbey ha[d] any record of [her] applying for PTD." [*Id.*]. The letter also indicated that Goodwin had no documentation of her alleged application and that time to apply for permanent and total disability benefits had expired. [*See id.*]. The letter also set forth the appeal procedure, explaining that Goodwin "must submit a written request to have [her] claim reviewed within 60 days after [she] received the denial." [*Id.*].

Goodwin retained legal representation regarding the denial of her permanent and total disability benefits. [*See* Defendant's Ex. 22]. She appealed the denial of her permanent and total disability benefits on December 10, 2002. [*See id.*]. It is at this point that Goodwin began to allege that "she in fact contacted members of the personnel department of [Libbey Glass] at the time she became disable[d]" and that

2. Both Goodwin and Libbey Glass have submitted an undated notation that states: "Aetna turned down her [Goodwin's] PTD request." [Defendant's Ex. 14]. This notation is handwritten on the bottom of a "Hourly Deferred Vesting" form dated March 23, 1995. [*See id.*]. The significance of this handwritten notation will be discussed in the "Law and Analysis" section of this memorandum ruling.

3. PTD refers to permanent and total disability benefits.

4. In the September 4, 2002 letter, Fleig incorrectly stated that there was a two-year time

limit, from the last day of work, to apply for permanent and total disability status. [*See* Defendant's Ex. 21]. Such misstatement was acknowledged, and corrected, by Libbey Glass in an October 14, 2002 letter to Goodwin. [*See* Defendant's Ex. 20]. For purposes of the instant motion, the above-mentioned misstatement does not affect the Court's ruling, as in September 2002 both the twelve month time limit and mistaken two-year time limit to apply for permanent and total disability benefits had expired.

"she was informed by them that they would process her claim and she would receive notification thereof." [*Id.*].

On January 27, 2003, the Libbey Inc. Employee Benefits Committee (the "Committee") upheld the denial of Goodwin's permanent and total disability benefits. [*See* Defendant's Ex. 23]. The Committee upheld the denial "because Ms. Goodwin failed to timely file her application for permanent and total disability benefits with Aetna as required by the Libbey benefit plans at issue." [*Id.*]. By letter dated March 25, 2003, Goodwin was informed of the Committee's decision. [*See id.*]. The March 25, 2003 letter also referenced the Libbey Glass Hourly Benefit Booklet ("the booklet") for Shreveport, LA for AFGWU Local No. 711 hourly employees. [*See id.*]. The booklet was effective March 1, 1990 and was applicable to Goodwin's appeal. [*See id.*]. As to permanent and total disability benefits, the booklet stated:

How to File a Claim

*Your [the applicant's] claim for permanent and total disability benefits must be filed with the insurance company within 12 months after you stop active work. (Emphasis added.)*

In order to file a claim for permanent and total disability benefits, you [the applicant] must complete the appropriate claim form and furnish a Physician's Statement completed by your [the applicant's] attending physician. These forms are available in your [the applicant's] Personnel Department.

[*Id.*]. After being informed that her appeal had been denied, Goodwin filed the instant lawsuit on July 18, 2003. [*See* Doc. No. 1].

## IV. LAW AND ANALYSIS.

### A. Summary Judgment Standard.

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir.1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir.1995). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25, 106 S.Ct. at 2552). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046–47 (5th Cir.1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Wallace*, 80 F.3d at 1048

(quoting *Little,* 37 F.3d at 1075). *See also S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir.1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir.1995), *as revised on denial of rehearing,* 70 F.3d 26 (5th Cir.1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

**B. Goodwin Has Failed To Submit Competent Summary Judgment Evidence Designating Specific Facts Showing There Is A Genuine Issue Of Fact As To Whether She Made A Timely Application For Permanent And Total Disability Benefits.**

Under the terms of the Libbey Glass group insurance plan, Goodwin's written application for permanent and total disability benefits should have been filed with Aetna within twelve months after she stopped active work. [*See* Defendant's Exs. 6 & 23]. Thus, a timely application would have been filed within twelve months of June 25, 1993, Goodwin's last day of actual work at Libbey Glass. [*See* Defendant's Ex. 16]. Even if this Court were to generously interpret the plain language of the group insurance plan, a timely application would have filed within twelve months of March 1, 1994, the date of Goodwin's actual termination from Libbey Glass. [*See id.*].

Libbey Glass has presented the sworn affidavits of Peter Kriegler, Claims Manager of Aetna, and Peter Williams, Libbey Glass Human Resource Manager, both of whom attest that Goodwin did not make a timely request for permanent and total disability benefits under the Libbey Glass group insurance plan. [*See* Defendant's Exs. 12 & 16]. With this evidence, Libbey Glass has met its initial burden of demonstrating the absence of a genuine issue of material fact as to whether Goodwin timely submitted her application for permanent and total disability benefits. As recognized by the Fifth Circuit, to survive summary judgment, Goodwin must "submit or identify evidence in the summary judgment record (such as affidavits, depositions, answers to interrogatories, or admissions on file) that designates *specific facts* showing there is a genuine issue of fact." *Smith v. United States,* 391 F.3d 621, 625 (5th Cir.2004); *see also Auguster v. Vermilion Parish School Board,* 249 F.3d 400, 402 (5 Cir.2001).

The Court finds that Goodwin has failed to meet this burden, as she has neither submitted nor identified competent summary judgment evidence designating *specific facts* showing there is a genuine issue of fact as to whether she timely requested permanent and total disability benefits. Simply put, Goodwin presented only "a scintilla of evidence" in opposition to the motion for summary judgment. *See Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir. 1996). She relied on vague allegations that she did not know when to request permanent and total disability benefits because she never knew she was terminated from Libbey Glass; that Williams and/or other Libbey Glass employees denied her request for permanent and total disability benefits; and that employees of the Libbey Glass personnel department informed her they would process her claim for permanent and total disability benefits, but failed to do so. [*See* Doc. No. 25 at 2 & Defendant's Ex. 22].

The record does not support Goodwin's contention that she did not know

when to apply for permanent and total disability benefits because she never knew she was terminated. While the record does not contain a letter or other form of documentation addressed to Goodwin specifically stating, "effective March 1, 1994, your employment at Libbey Glass is terminated," the record is replete with evidence indicating that Goodwin knew her employment at Libbey Glass had ended. Most importantly, Goodwin testified in her deposition that she knew her employment at Libbey Glass had ended after her workers' compensation claim settled in 1994 and "that's why [she] went after [her] permanent and total disability, [a]s [her] attorney ... had told [her] that [she] had to write to file for [her] PTD papers." [Defendant's Ex. 15]. Further, when asked whether she "knew how long she had to file" for permanent and total disability benefits, Goodwin answered "yes." [Defendant's Ex. 17, lines 16–18]. In light of this undisputed evidence, the Court finds that Goodwin's claim that she did not know when to apply for permanent and total disability benefits because she never knew she was terminated does not create a genuine issue for trial.

In support of her claim that Williams and/or other Libbey Glass employees denied her request for permanent and total disability benefits, Goodwin relied on the affidavit of Marget Howard ("Howard"). Howard's affidavit states:

> She [Howard] went to the Human Resource at the Libbey Glass plant with Joan Ruben 1992[.] She talked about why she could not do light duty and that she need her Job. Mr. William [s]tated that there was no light duty. And also stated there was nothing she could do[.]

At the Libbey glass plant in Shreveport. I [Howard] personally heard her ask for her permanent total disability[.]

[Doc. 25, Affidavit of Marget Howard]. Even accepting this affidavit as true, the Court cannot find that it creates a genuine issue of material fact as to whether Goodwin applied for permanent and total disability benefits within twelve months of her last day of actual work, *i.e.*, June 25, 1993. [*See* Defendant's Ex. 16 at 2]. At most, the affidavit is simply evidence that Goodwin *inquired* as to permanent and total disability benefits at some point in 1992, not that she completed the required written application for permanent and total disability benefits and requested that Williams forward the application onto Aetna.[5] Thus, Howard's affidavit does not create a genuine issue for trial.

Goodwin has also failed to support her claim that employees of the Libbey Glass personnel department informed her they would process her claim for permanent and total disability benefits, but failed to do so. As stated previously, Howard's affidavit is simply not evidence that Goodwin completed a written application for permanent and total disability benefits and requested that Williams, or any other Libbey Glass employee, forward the application onto Aetna. The only other reference to such a claim is contained in a letter written by Goodwin's former legal counsel on December 10, 2002; yet, Goodwin has failed to provide any evidence to support this unsubstantiated assertion. [*See* Defendant's Ex. 22].

Notwithstanding, even if this Court assumes that employees of the Libbey Glass

---

5. The Libbey Glass group insurance plan states that Aetna, not Libbey Glass, "must receive written notice" of a claim for permanent and total disability benefits. [Defendant's Ex. 6] [emphasis added]. Further, the Libbey Glass Hourly Benefit Booklet states that the applicant's *"claim for permanent and total disability benefits must be filed with the insurance company within 12 months after you stop active work"* and that the applicant "must complete the appropriate claim form." [Defendant's Ex. 23].

personnel department accepted Goodwin's oral request for permanent and total disability benefits and then failed to refer the oral application to Aetna, Goodwin's claim fails. Goodwin apparently contends that once she orally requested permanent and total disability benefits from Libbey Glass, a duty arose and Libbey Glass was required to forward her oral application onto Aetna. After reading both the Libbey Glass group insurance plan [*See* Defendant's Ex. 6] and the Libbey Glass Hourly Benefit Booklet [*See* Defendant's Ex. 23], it is clear that Goodwin, not Libbey Glass, had a duty to complete and file the written application for permanent and total disability benefits with Aetna. Thus, while the Court believes that Libbey Glass had no duty to forward Goodwin's oral application for permanent and total disability benefits onto Aetna, for purposes of this memorandum ruling, the Court assumes that such a duty existed.

Based on the foregoing, Goodwin's claim that Libbey Glass failed to forward her oral request for permanent and total disability benefits onto Aetna is properly characterized as a delictual action, as Libbey Glass' act, or failure to act, constituted an intentional or negligent act under Louisiana Civil Code Article 2315.[6] Delictual actions such as this are subject to a liberative prescription of one year. *See* La. C.C. Art. 3492.

■ Goodwin admitted in her deposition that she called Aetna "about five years ago because [she] wasn't getting anywhere with Libbey." [Defendant's Ex. 18, lines 8–9].[7] According to Goodwin, it was during this telephone call that Aetna informed her that it did not have any record of her ever applying for permanent and total disability benefits. [*See* *id.*, lines 9–10].

Thus, when Aetna informed Goodwin in 1999 that it did not have any record of her claim for permanent and total disability benefits, she was on notice that Libbey Glass had not forwarded an application for permanent and total disability benefits onto Aetna. [*See* Defendant's Ex. 18]. However, Goodwin did not begin to make inquiries as to Libbey Glass' alleged failure to forward her application for permanent and total disability benefits until the latter part of 2002. [*See* Defendant's Exs. 20, 21 & 22]. Most importantly, Goodwin did not file the instant lawsuit until July 18, 2003, well beyond the one-year prescriptive period applicable to her claim. [*See* Doc. 1]. Thus, Goodwin's claim that employees of the Libbey Glass personnel department informed her they would process her claim for permanent and total disability benefits, but failed to do so has prescribed.

Further, Goodwin seemingly contends that a handwritten notation on the bottom of a "Hourly Deferred Vesting" form is proof that she timely requested permanent and total disability benefits. [*See* Doc. No. 25 at 3 & Defendant's Ex. 1 at 88–90]. Both Goodwin and Libbey Glass have submitted a copy of this undated handwritten notation, which states: "Aetna turned down her [Goodwin's] PTD request." [Defendant's Ex. 14]. Libby Glass explained the notation, stating that the original "Hourly Deferred Vesting" form was completed by Jeff Garland, an employee of the Libbey Glass personnel department, on March 23, 1995 and that the handwritten notation was added at a later date by Christine L. Dreps ("Dreps"), the Benefits Manager at Libbey Glass. [*See* Doc. No. 22 at 10–11]. Libbey Glass submits that

---

**6.** Louisiana Civil Code Article 2315 states: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

**7.** Goodwin's deposition was taken on March 26, 2004. [*See* Defendant's Ex. 1]. Thus, her call to Aetna would have occurred sometime in 1999.

Dreps wrote the notation, which is in a different color ink and in a different handwriting than the rest of the form, in conjunction with a conversation with Goodwin, wherein Goodwin related to Dreps that Aetna had turned down her permanent and total disability benefits request. [*See id.* at 11].

Goodwin has specifically argued at various points in her pleadings, and during her deposition, that the handwritten notation is proof that she filed a written application for permanent and total disability benefits. [*See* Doc. No. 25 at 3; *See* Defendant's Ex. 1 at 88–90]. However, Goodwin admitted in her deposition that Aetna had never received a written permanent and total disability request; consequently, Aetna could not have turned down such a request. [*See* Defendant's Ex. 1 at 91, lines 2–3]. Due to Goodwin's own admission that Aetna never received her application for permanent and total disability benefits, the Court cannot find that the handwritten notation, which Libbey Glass has amply explained, demonstrates a genuine issue of material fact as to whether Goodwin made a timely application for her permanent and total disability benefits.

## V. CONCLUSION.

Based on the foregoing, the Court finds there are no genuine issues of material fact as to whether Goodwin timely applied for permanent and total disability benefits. Libbey Glass demonstrated the absence of such material facts with competent summary judgment evidence, namely the affidavits of Peter Williams and Peter Kriegler. Conversely, Goodwin failed to designate specific facts in the record showing there is a genuine issue of fact. *See Smith v. United States,* 391 F.3d 621, 625 (5th Cir.2004); *see also Auguster v. Vermilion Parish School Board,* 249 F.3d 400, 402 (5 Cir.2001). Rather, Goodwin relied on the conclusory allegations that she did not know when to request perma-

nent and total disability benefits because she never knew she was terminated from Libbey Glass; that Williams and/or other Libbey Glass employees denied her request for permanent and total disability benefits; and that employees of the Libbey Glass personnel department informed her they would process her claim for permanent and total disability benefits and failed to do so. Moreover, she presented only a scintilla of evidence in support of these bare minimum assertions. Simply put, Goodwin presented insufficient evidence for a jury to return a verdict in her favor; thus, there are no genuine issues for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Therefore:

IT IS ORDERED that Defendant's Motion for Summary Judgment [Doc. 22] shall be **GRANTED**.