IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 20, 2007

Charles R. Fulbruge III
Clerk

No. 07-30228
Summary Calendar

ROY MICHAEL BRAUNINGER,

Plaintiff-Appellant,

v.

DAVID MOTES; DEFAULT MANAGEMENT SOLUTIONS, L.L.C.,

Defendants-Appellees.

———————

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:05-CV-688

———————

Before REAVLEY, SMITH, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Michael Brauninger appeals a summary judgment in an employment dis-
crimination and defamation suit he brought against David Motes and Default

———————

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Management Solutions, L.L.C., now known as First American Loss Mitigation Services ("FALMS"). Finding no error, we affirm.

## I.

In March 2003 FALMS hired Brauninger as a manager with supervisory authority over numerous FALMS employees. Rick Roniger, an Executive Vice President and branch manager, and Amy Williamson, a Human Resources Manager, interviewed Brauninger, consulted with each other and jointly decided to offer Brauninger the position. At the time, Brauninger was a 50-year-old white male; Roniger was a 51-year-old white male; and Williamson was a white female in her thirties.

In April 2004, FALMS employee Angelica Jeter called the Human Resources Department to report sexually harassing comments allegedly made by Brauninger to Jodi Bougeouis, another FALMS employee under Brauninger's supervision. Two days later, Bougeouis called the Human Resources Department to complain.

Based on these complaints, Amy Williamson began investigating Brauninger's conduct. On May 4, 2004, Williamson interviewed multiple employees in that office, including Jodi Bougeouis, Angelica Jeter, Nancy Stroebel, Monique Simms, Lee Lebaud, Kim Schroeder, Judy Lewis, David Motes, and Brauninger. During the interviews, Williamson received first- and second-hand reports of sexual and racial comments made by Brauninger to co-workers and subordinates. These included Brauninger's description of an employee as a "nigger lover," sexual advances Brauninger made to Jodi Bougeouis, Brauninger's express desire to hire a job candidate because of her breasts, and during a meeting with employees, his reference to a female client as "the bitch with big boobs," including illustrative hand gestures to emphasize the point.

On the day of the interviews, Williamson discussed the allegations with her Human Resources supervisor, Judy Ellison, and with Roniger. The three of

them decided that Brauninger had violated FALMS' policy against sexual harassment, and they agreed to terminate his employment immediately.

On May 4, 2004, less than fourteen months after hiring Brauninger, FALMS fired him. Subsequently, Williamson recorded her findings and notes from the various interviews in a report, which noted that two employees related being told by Brauninger of his intention to "sue the shit out of everyone."

FALMS formally confirmed its decision to terminate Brauninger in a letter dated May 6, 2004, which also informed Brauninger that he could contest the termination through FALMS's "complaint resolution process." Brauninger appealed the termination decision through that process, claiming that he had not engaged in improper conduct and that the witnesses interviewed by Williamson were part of a conspiracy against him. Brauninger did not, at that point, claim age, race, or sex discrimination.

In response to the administrative appeal, Ellison conducted a second investigation of the complaints against Brauninger. She interviewed some of the employees interviewed by Williamson in her initial investigation and other employees. Her investigation corroborated Williamson's, and she concluded that the decision to terminate Brauninger had been appropriate. Ellison recorded her findings in a report and in a letter sent to Brauninger on June 24, 2004.

Brauninger filed a claim with the EEOC alleging he was fired because of his age. The EEOC dismissed the claim, and Brauninger filed a federal age discrimination suit against FALMS, also raising state race and sex discrimination claims against FALMS and state defamation claims against FALMS and its employee Motes.

The district court granted FALMS's motion for summary judgment on the discrimination claims but denied FALMS's and Motes's motions for summary judgment on the defamation claims. The court later granted Motes's motion for reconsideration of the defamation claims and awarded Motes and FALMS summary judgment on those claims. Brauninger appeals the summary judgments

and the admission of Williamson's and Ellison's affidavits, reports, and letters.

## II.

Brauninger contends the district court erred by admitting into evidence Williamson's and Ellison's affidavits, their written reports, and their letters to Brauninger, who objects to the admission of all these documents on essentially two groundsSSthat they are unreliably "self-serving" and are based on inadmissible hearsay. We review for abuse of discretion. United States v. Anderson, 933 F.2d 1261, 1267-68 (5th Cir. 1991).

The district court found that Williamson's and Ellison's affidavits complied with the requirements of 28 U.S.C. § 1746, were based on personal knowledge, and served to authenticate the reports and letters that accompanied them. The court thus found the affidavits sufficiently relevant and reliable. Although Brauninger dismisses the affidavits as containing merely "self-serving" assertions, he offers no specific reason to doubt that the affidavits are based on Williamson's and Ellison's personal knowledge regarding the conduct of their own investigations and employment decisions. Accordingly, the court did not abuse its discretion in admitting the affidavits.

Brauninger's principal complaint, however, regards the admission of Williamson's and Ellison's reports and letters. Williamson's report chronicles the steps in her investigation, the complaints she received, the witnesses she interviewed, statements made during those interviews, and the basis for the decision to terminate Brauninger. Her termination letter to Brauninger summarizes the findings of her investigation. Ellison's report likewise chronicles her own follow-up investigation, and her letter to Brauninger similarly summarizes her additional findings. The court admitted the reports and letters, finding that they contained non-hearsay and hearsay evidence admissible under the business records exception of Federal Rule of Evidence 803(6).

Although the reports contained statements made by FALMS employees to Williamson or Ellison during the course of their interviews, the district court correctly found that those statements are not hearsay. Because they were offered to prove what was said to Williamson and Ellison, and thus what Williamson and Ellison relied on in making the decision to fire Brauninger, the statements were not offered to prove the truth of the matters asserted.[1]

Although the statements of FALMS employees contained in the reports were not hearsay, the reports constitute out-of-court statements by Williamson and Ellison that are hearsay. Yet, the district court deemed the reports admissible under rule 803(6)'s exception to the hearsay exclusion. That rule allows the admission of "report[s] . . . made at or near the time by . . . a person with knowledge, if kept in the course of a regularly conducted business activity, . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." FED. R. EVID. 803(6). The court correctly found that the reports were made at or near the time of the investigations, were based on Williamson's and Ellison's personal knowledge of their own investigations, and were the result of a regularly conducted business activity. As to the last of those findings, the court properly noted that the investigation and documentation of sexual harassment allegations are ordinary business practices and regular parts of Williamson's and Ellison's duties as human resource managers.[2]

Brauninger, however, argues that Williamson's and Ellison's reports fall

---

[1] See FED. R. EVID. 801(c) (explaining that a statement is not hearsay if offered for a reason other than proving truth of the matter asserted). Brauninger takes issue with many of the accusations leveled against him by FALMS employees, and his brief implies that the alleged falsity of those accusations is a centerpiece of his suit. Because he was an at-will employee, however, the key issue is not whether the accusations were true but instead whether Williamson, Ellison, and Roniger relied on themSSmistakenly or notSSin making a nondiscriminatory decision.

[2] See La Day v. Catalyst Tech., Inc., 302 F.3d 474, 481 n.7 (5th Cir. 2002) (stating that human resource manager's harassment investigation notes were admissible as a business record).

under an exception to rule 803(6) for business records prepared in anticipation of litigation. Brauninger urges that before writing the reports, Williamson and Ellison knew of his intention to sue.

Although rule 803(6) does not refer to an exception for business records prepared in anticipation of litigation, the exception amounts to a corollary of rule 803(6)'s requirement that admissible business records result from a "regularly conducted business activity"SSand thus not from the mere anticipation of litigation. Construing the statutory predecessor to rule 803(6), the Supreme Court held that a railroad's accident reports were inadmissible where "those reports are not for the systematic conduct of the enterprise as a railroad business" but rather "are calculated for use essentially in the court." Palmer v. Hoffman, 318 U.S. 109, 114 (1943). Applying Palmer, this court has deemed reports inadmissible where their "primary utility" is for litigation. Broadcast Music, Inc. v. Xanthas, Inc., 855 F.2d 233, 238 (5th Cir. 1988).

The district court correctly found that the primary purpose of Williamson's and Ellison's reports had little to do with any anticipated litigation by Brauninger. The harassment investigation was triggered by employees' sexual harassment complaints and not by Brauninger's subsequent threat to sue. In response to harassment complaints against Brauninger, it was an ordinary practice for human resource managers to investigate those complaints and to document the findings of that investigation.

Nor did the district court err in deeming the reports trustworthy. Admissibility of evidence under rule 803(6) "is chiefly a matter of trustworthiness." Miss. River Grain Elevator, Inc. v. Bartlett & Co., Grain, 659 F.2d 1314, 1319 (Former 5th Cir. Oct. 1981). Brauninger makes much of the fact that Williamson's report was written after the decision to terminate had already been made. Yet, although Brauninger frames the report as an ex post facto attempt to justify a firing decision, we do not agree that the timing of the report undermines its

trustworthiness.

On May 4, 2004, shortly after receiving complaints against Brauninger, Williamson visited the FALMS office to conduct interviews. Upon interviewing the witnesses and learning of the seriousness of the allegations, Williamson determined that Brauninger needed to be fired immediately.[3] Williamson conferred by phone with her supervisors, and Brauninger was terminated that day. Under the circumstances, it would not be reasonable to expect Williamson to refrain from terminating Brauninger until she had time to type up her notes into a formal report.

### III.

Brauninger challenges the summary judgment on his discrimination and defamation claims. We review a summary judgment de novo, applying the same standards as did the district court. Gowesky v. Singing River Hosp. Sys., 321 F.3d 503, 507 (5th Cir. 2003).

Summary judgment is appropriate if "there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c). "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." Gowesky, 321 F.3d at 507 (internal quotations and citation omitted). Although the summary judgment evidence is viewed in the light most favorable to the non-moving party, this may be done only "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citations omitted). To establish that a genuine controversy exists, the non-moving party must offer more than "conclusory allegations" and

---

[3] Indeed, FALMS may have been exposed to the prospect of title VII liability if it did not "correct promptly" the alleged sexual harassment. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998).

"unsubstantiated assertions."  Id.

A.

Under the burden-shifting scheme of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973),[4] a plaintiff in an employment discrimination suit must first establish a prima facie case.  Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512 (5th Cir. 2001).  Once established, the prima facie case raises a presumption of discrimination, which the employer can rebut by demonstrating a legitimate, nondiscriminatory reason for its action.  Id.  If the employer supplies a nondiscriminatory reason, the burden shifts to the plaintiff to show that the employer's reason either was a pretext for discrimination or was mixed with a discriminatory motive.  Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).

The district court assumed a genuine issue of material fact as to whether Brauninger could establish a prima facie case, but the court went on to find no issue as to the existence of a nondiscriminatory reason for FALMS's firing decision and the absence of pretext or mixed motive.  We agree with the district court that Brauninger has not established a genuine issue of material fact regarding FALMS's reasons for terminating his employment.

Assuming Brauninger establishes a prima facie case, FALMS has met its summary judgment burden of demonstrating a legitimate, nondiscriminatory reason for firing him.  Williamson's and Ellison's affidavits, reports, and letters suggest FALMS did so because of multiple allegations that Brauninger had sexually harassed employees and had created a hostile work environment in viola-

---

[4] Although Brauninger brings his race and sex discrimination claims under state law, Louisiana courts have observed "the commonality between federal and state anti-discrimination laws," and have approved the application of title VII's McDonnell Douglas doctrine to state discrimination claims.  Baldwin v. Bd. of Sup'rs for Univ. of La. Sys., 961 So. 2d 418, 422 (La. App. 1st Cir. 2007).  We therefore consider Brauninger's age, race, and sex claims under the same rubric.

tion of company policies. Although Brauninger claims FALMS conducted a hasty investigation and relied on "hearsay witnesses who bore particular grudges" against him, he was an at-will employee whom FALMS could fire for any lawful reason or for no reason at all.

To survive summary judgment, FALMS need only show that it relied in good faith on allegations of Brauninger's misconductSSa nondiscriminatory reason for termination.[5] Brauninger points to no summary judgment evidence disputing that FALMS relied in good faith on the various allegationsSSaccurate or notSSagainst him.[6] Failing to do so, Brauninger's persistent attempt to dispute the accuracy of those allegations is not relevant to his discrimination claim.

Because FALMS has met its summary judgment burden of providing a nondiscriminatory reason for firing Brauninger, the burden shifts to Brauninger to establish a genuine issue of material fact as to pretext or mixed motive. To survive summary judgment on either theory, Brauninger must offer competent evidence of discriminatory animus against him on account of his race, age, or sex. We agree with the district court that he has not done so.

Brauninger's brief points to three arguably relevant pieces of evidence of discriminatory animus against him, a white male in his early fifties. First, he

---

[5] "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason. We do not try in court the validity of good faith beliefs as to an employee's competence." Little v. Republic Refining Co., 924 F.2d 93, 97 (5th Cir. 1991); see also Elliott v. Group Med. & Surgical Serv., 714 F.2d 556, 567 (5th Cir. 1983) (noting that the McDonnell Douglas doctrine is not "a device which permits the jury to examine an employer's reasons for discharge and determine that the employer's business judgment or policies do not appeal to its sensibilities").

[6] The only evidence of bad faith suggested in Brauninger's brief is his assertion, based solely on personal knowledge, that nobody else in that office had been fired for a "first offense" of employee misconduct during the fourteen months Brauninger worked there. Yet, Brauninger points to no specific examples, in the summary judgment record, of employees who were retained despite committing "first offenses" similar in seriousness to the harassment offenses he was alleged to have committed. Moreover, Brauninger concedes that FALMS's company policies warn that offenses involving sexual harassment "may subject an employee to immediate termination."

offers the fact that over 80% of employees in FALMS's office were non-white minorities. Standing alone, however, this statistic does not amount to probative evidence of discrimination without accompanying evidence that there is a "gross statistical disparity" between FALMS's workforce and a "qualified pool" of potential employees "presumptively eligible" for employment. Anderson v. Douglas & Lomason Co., 26 F.3d 1277, 1290 (5th Cir. 1994). The summary judgment record contains no such evidence.

Second, Brauninger offers the fact that Williamson once told co-workers she had been married to black and hispanic men. Such comment, however, does not show racial animus against white men.

Third, Brauninger offers the fact that Roniger, who was one year older than Brauninger, had referred jokingly to himself, Brauninger, and another employee as "grey-haired men." Such stray remark, however, is not unambiguous evidence of animus, given that Roniger was referring to himself as well as to Brauninger.[7] Nor has Brauninger shown that the remark was related to, or proximate in time to, a specific employment decision.[8]

To defeat summary judgment, the evidence must be sufficient on its own to "support a jury verdict in the nonmoving party's favor."[9] On the thin evidence offered by Brauninger, no reasonable jury could conclude that discriminatory animus motivated Brauninger's firingSSindeed, a firing occurring little over a

---

[7] Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 222 (5th Cir. 2001) (quoting Wyvill v. United Cos. Life Ins. Co., 212 F.3d 296, 304 (5th Cir. 2000)) (explaining that to support an inference of animus, a stray remark must be "direct and unambiguous").

[8] See Brown v. CSC Logic, Inc., 82 F.3d 651, 655 (5th Cir. 1996) (requiring comments be related and proximate to employment decision).

[9] 11 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.13[2], at 146-47 (3d ed. 2007); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.").

year after Brauninger was hired by the same people who fired him.[10]  We there-fore agree with the district court that Brauninger's discrimination claims do not survive summary judgment.

## B.

Under Louisiana law, a claim for defamation must establish causation, or "resulting injury."  Costello v. Hardy, 864 So. 2d 129, 140 (La. 2004). In other words, a defamation plaintiff "must show a 'but for' causal connection between the defendant's conduct and the injuries."  Kosmitis v. Bailey, 685 So. 2d 1177, 1181 (La. App. 2d Cir. 1996).  Brauninger contends that Motes spread false and defamatory statements about him and that those statements caused him to be fired.  The district court dismissed Brauninger's defamation claims against FALMS and Motes because no reasonable jury could find that Motes's state-ments were a "but for" cause of Brauninger's termination.  We agree.

In his brief, Brauninger makes the unsupported assertion that "[a]ll dam-aging information concerning Mike Brauninger came from David Motes." Al-though Motes appears to have been a source of much gossip in the office, Wil-liamson's report documents the sources relied on in confirming Brauninger's in-appropriate comments.  Nearly all were confirmed by firsthand accounts and not by rumors allegedly started by Motes:  Stroebel claimed Brauninger suggested to her that he wanted to hire a job candidate because of her breasts; Bougeouis claimed Brauninger made multiple sexual advances to her, and she averred that Brauninger told her another employee was a "nigger lover;" Lee Lebeaud and Lewis claimed Brauninger referred to a client as "the bitch with big boobs" dur-ing an employee meeting they attended.

Moreover, Williamson, Ellison, and Roniger confirmed in affidavits that

---

[10] See Faruski v. Parsons S.I.P., Inc., 123 F.3d 315, 321 n.3 (5th Cir. 1997) (stating that the fact that same person hires and fires employee raises inference of nondiscriminatory motive for firing).

they would have terminated Brauninger based on these firsthand reports, regardless of any secondhand rumors started by Motes. Aside from the unsupported assertion in his brief, Brauninger has offered no summary judgment evidence suggesting that FALMS did not rely on these firsthand accounts in making its decision to terminate him.[11] As the district court also observed, Brauninger appears never to have probed the basis for the termination decision through discovery devices or depositions of FALMS employees.

Because Brauninger has not demonstrated a genuine issue of material fact with regard to causation, we need not reach the other elements of his defamation claim, nor need we address the issue of FALMS's vicarious liability for Motes's alleged defamation. Accordingly, the district court correctly granted summary judgment to FALMS and Motes on the defamation claim.

AFFIRMED.

---

[11] See Little, 37 F.3d at 1075 (requiring more than "conclusory allegations" and "unsubstantiated assertions" to survive summary judgment).